## SALATA *v.* DYLEWSKI.

1. EXCHANGE OF PROPERTY—FRAUD—EVIDENCE—SUFFICIENCY.

 In a suit for the rescission of a contract for an exchange of property, evidence *held*, sufficient to show fraud on the part of defendants in that the lots they deeded to plaintiffs were two and one-half miles beyond the point they were represented to be, and were taken at a valuation of $3,000, while actually they were not worth $1,400.[1]

2. PRINCIPAL AND AGENT—SERVANT CANNOT SERVE TWO MASTERS—BROKERS.

 A real estate broker, acting as agent of one of the parties to a contract for an exchange of property, may not charge the other party' for his services without the knowledge and consent of his principal.[2]

3. EXCHANGE OF PROPERTY—FRAUD MAY NOT BE DEFENDED ON GROUND OF IGNORANCE OF DEFRAUDED PARTY.

 Where defendants falsely represented the location of the lots they deeded to defendants, they may not defend a suit for rescission of the contract of exchange on the ground that plaintiffs were so densely ignorant of streets and location that the fraud they practiced could find no lodgment.[3]

4. SAME—TENDER NOT NECESSARY BEFORE STARTING SUIT TO RESCIND WHERE IT WOULD BE IDLE CEREMONY.

 Failure to tender property received by plaintiffs in an exchange of property is no bar to a suit for rescission on the ground of fraud, where the record shows that tender would have been an idle ceremony.[4]

Appeal from Wayne; Boomhower (Xenophon A.), J., presiding. Submitted January 13, 1926. (Docket No. 170.) Decided March 20, 1926.

Bill by Semen Salata and another against Wladyslaw Dylewski and others for the rescission of an exchange

---

[1]Cancellation of Instruments, 9 C. J. § 195. Exchange of Property, 23 C. J. § 95; [2]Brokers, 9 C. J. § 76; [3]Fraud, 26 C. J. § 101; [4]Cancellation of Instruments, 9 C. J. § 106.

General rule as to right to rely on representations on exchange of real property, see note in 37 L. R. A. 593.

of real estate on the ground of fraud.    From a decree
for plaintiffs, defendants Dylewski appeal.    Affirmed.

*Ezra H. Frye* and *William Cohen,* for plaintiffs.

*Peter P. Boyle (John J. Adamski,* of counsel), for
appellants.

WIEST, J.    Paradise Gardens subdivision is in the
county of Macomb, between the 10 and 11-Mile roads,
about half a mile from Gratiot avenue.    In September,
1921, plaintiffs had an equity in a home in the city of
Hamtramck.    Wladyslaw Dylewski owned three lots
in Paradise Gardens.    Harry Wasylyshyn is a real
estate agent and plaintiffs listed their equity with him
for sale or exchange and Dylewski also employed him
to sell or exchange his lots.    The real estate agent
brought the parties to a deal, in which Dylewski gave
plaintiffs the three lots, a half interest in a Ford truck
being purchased on the installment plan, paid $175
in cash, and took over plaintiffs' equity in their home
at an agreed value of $3,000.

Claiming false and fraudulent representations, plain-
tiffs filed the bill herein for rescission.    Decree was
entered setting the deal aside, adjusting taxes paid,
payments made on the land contract, use of premises
and repairs, with a personal decree against the real
estate agent for the commission paid him by plaintiffs.
Defendants appealed.

But one alleged false representation need be con-
sidered.    It is claimed by plaintiffs that the owner
of the lots, and the real estate agent in his behalf
and presence, stated the lots were on the 7-Mile road
near Gratiot.    This was denied.    Defendants also
set up the fact that they took Mr. Salata to view the
lots, and he then had opportunity to note their location.
Defendants did take Mr. Salata to the lots, but reached
there after dark.    The lots, as before stated, are be-
tween the 10 and 11-Mile roads, about half a mile

from Gratiot, but Mr. Salata was not acquainted with that section and this, together with the darkness, rendered him unable to note the location thereof.

The evidence satisfies us that the lots were represented to be on the 7-Mile road near Gratiot avenue. This was false. The lots are on Forest street, two and one-half miles beyond the 7-Mile road. Lots at the 7-Mile road are worth far more than lots in Paradise Gardens.

It would be of no benefit to the profession to quote the testimony. The want of fairness of the real estate agent is indicated in his admission that the three lots he engineered his client to take at a value of $3,000 were then worth but $1,400. In fact the three lots were not worth anywhere near $1,400. This agent charged plaintiffs $175 commission and tried to get $150 commission from Dylewski. Again we have verification of the saying "No man can serve two masters."

Mr. Dylewski appears to have an unreliable memory. He remembers that Mrs. Salata went with her husband to view the lots. All the other members of the party testified she did not go.

But it is said in behalf of defendants:

"We do not see how fraud could have been committed upon the plaintiffs, assuming the statements to have been made which they claim, because such statements did not have any significance, since they could not associate them with a location, about which they knew something and without such association of ideas, in other words, without knowledge of the character of the neighborhood which they claim the lots were represented to be located in, they could not have been deceived in any way. Defendants said nothing about the neighborhood."

Of course, no authority is cited in support of this view. It does not appeal to us. When it was represented to plaintiffs that the lots were located at a mentioned point, even if such point was one not

familiar to plaintiffs, they had a right to rely thereon, and defendants may not be heard to say that plaintiffs were so densely ignorant of streets and locations that the fraud they practiced could find no lodgment.

It is also insisted that plaintiffs did not tender a deed of the lots, release of the interest in the truck, or the $175 cash payment, before filing the bill, and are, therefore, without remedy.

Mr. Salata testified:

"After I found out where these lots were located, I went and talked with Mr. Dylewski. I told him the lots were too far away and not in the place that he said they were. I asked him what he would do to straighten it out, and asked him to give me back mine, and I would give him back his. He said what he wanted he had, and everything else was lost, and I understood from that he meant that I had nothing else to do with it. I told him that he cheated me, that the lots were not where they were supposed to be—that I wanted my house back, and I would give him back the lots, but he would not do that. I asked him this several times while he was living in the house with me. I would see him almost every day while he lived there, and on every occasion I would talk about this deal, telling him that he had cheated me, and that I lost much money from this. It was several weeks from the time I asked him to give me back my house that I started this suit."

Tender would have been an idle ceremony and the attitude of defendants show a tender would avail nothing even at this date. Defendants are in no position to rely on want of tender. *Snyder* v. *Markham*, 172 Mich. 693; *Cox* v. *Holkeboer*, 200 Mich. 86; *Burns* v. *Misura*, 228 Mich. 152. The evidence supports the decree and equity and good conscience require that the wrong be righted.

The decree is affirmed, with costs to plaintiffs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred.